UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TRANG NGUYEN, | Case No.  21-cv-00121-RMI |
| Plaintiff, | |
| v. | **ORDER RE: MOTION TO INCREASE THE AMOUNT OF CLAIM** |
| UNITED STATES OF AMERICA, | Re: Dkt. No. 48 |
| Defendant. | |

Now pending before the court is Plaintiff's Motion to Increase Amount of Claim (dkt. 48). Defendant has responded in opposition (dkt. 55), Plaintiff has replied (dkt. 59), and the matter came on to be heard at oral argument on June 7, 2022 (dkt. 61). For the reasons discussed below, Plaintiff's motion is denied.

## **INTRODUCTION**

Plaintiff has sued Defendant, the United States of America, to recover damages for injuries she suffered in the course of an automobile accident involving Officer Russell Hurley of the Hoopa Valley Tribal Police. *See generally* Compl. (dkt. 1) at 3-6. On July 2, 2019, Plaintiff's automobile was struck from behind by Officer Hurley's patrol car; the force of the collision caused Plaintiff's vehicle to then crash into the rear of an automobile driven by Gary Lee Nicholson. *See id*. at 3. As a result of the collision, Plaintiff has alleged various incidents of bodily injury related to her head, neck, upper back, arms, and legs – as well as alleging certain consequential physical disabilities, pain-related motion restrictions, and emotional and psychological symptoms. *Id*. More than six months after the accident, Plaintiff submitted a damages claim to the United States Department of the Interior ("DOI") for the amount of

United States District Court
Northern District of California

1   $2,000,000.00. *Id*. Given that after the filing of her claim Plaintiff's injuries and disability

2   reportedly required surgery to her right elbow and to her right knee, on September 14, 2020,

3   Plaintiff submitted an amended claim to the DOI for the amount of $4,000,000.00. *Id*. at 4.

4   However, twelve days earlier, on September 2, 2020, DOI denied Plaintiff's claim. *Id*. Thereafter,

5   in January of 2021, Plaintiff filed a complaint (*see id*.) for damages in this court pursuant to the

6   Federal Tort Claims Act ("FTCA"), which provides an exclusive remedy against the United States

7   for injuries caused by tortious acts committed by its agents and employees that were effected

8   within the scope of their employment or agency. *See generally* 28 U.S.C. § 2671 *et seq*.

9        The cut-off date for fact discovery in this case was Friday, December 10, 2021. *See* Joint

10  Stip. and Order (dkt. 31) at 2. Nevertheless, on April 28, 2022, Plaintiff moved (pursuant to 28

11  U.S.C. § 2675, and Fed. R. Civ. P. 6(b)) for an order permitting her to increase the value of her

12  original claim from $2,000,000.00 to $4,000,000.00. *See* Pl.'s Mot. (dkt. 48) at 1. Plaintiff's basis

13  for the request is premised on "newly discovered evidence [that was] not reasonably discoverable

14  at the time of presenting the claim to the federal agency," to wit: January 31, 2020. *See id*. More

15  specifically, Plaintiff submits that after the submission of her claim in January of 2020, her

16  physicians determined she needed knee surgery (which took place on May 15, 2020) as well as

17  right elbow surgery (which took place on July 10, 2020). *See id*. at 6-8.

18       Defendant opposes and notes that Plaintiff's elbow condition (for which she eventually

19  underwent surgery) was known and diagnosed as early as May of 2019, and Plaintiff's knee

20  condition (for which she similarly underwent surgery) was diagnosed and known as early as

21  December of 2019 (citing to a medical record reflecting that Plaintiff's attending physician

22  specifically discussed the possible need for arthroscopic surgery). *See* Def.'s Opp. (dkt. 55) at 8-

23  13. By way of reply, Plaintiff asserts that her physician's 2019 notation, to the effect that it might

24  be advisable to consider arthroscopic surgery if there was no improvement with more conservative

25  treatment, should not be determinative here because Plaintiff asserts that Dr. Gayle merely

26  expressed this possibility in Plaintiff's medical records, rather than expressly telling Plaintiff

27  herself to consider surgery. *See* Pl.'s Reply (dkt. 59) at 4-5. In short, Plaintiff argues that she

28  should be allowed to increase the value of her claim – to $4,000,000.00 – because the nature and

1  extent of her knee and elbow injuries were unknown to her at the time she filed her $2,000,000.00

2  claim. *See id*. at 4-8.

3  **LEGAL STANDARDS**

4        Section 2675(a) of Title 28 provides that an action for a claim against the United States for

5  money damages based on injury or loss of property caused by the negligent or otherwise wrongful

6  act or omission of any federal employee acting within the scope of his or her employment must be

7  preceded by the presentation of that claim to the appropriate government agency. Further, seeking

8  an increased amount in court – beyond the amount of the claim presented to the federal agency –

9  requires a showing that "the increased amount is based upon newly discovered evidence *not*

10 *reasonably discoverable* at the time of presenting the claim to the federal agency, or upon

11 allegation and proof of intervening facts, relating to the amount of the claim." 28 § 2675(b)

12 (emphasis added).

13       Two pertinent points should be noted. First, the burden is on plaintiffs to show that any

14 subsequent amendment to value of such claims is based on one, or both, of the exceptions to the

15 statutory cap. *See Smith v. United States*, No. C 10-00212 WHA, 2011 U.S. Dist. LEXIS 113563,

16 at *5-6 (N.D. Cal. Oct. 3, 2011) (citing *Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990).

17 Second, an objective standard is applied to determine whether the nature and extent of a plaintiff's

18 injuries were reasonably discoverable at the time the original claim was presented to the agency

19 (*see Smith*, 2011 U.S. Dist. LEXIS 113563, at *5-6 (citing *Richardson v. United States*, 841 F.2d

20 993, 999 (9th Cir. 1988)); in other words, some measure of "due diligence on the part of the

21 plaintiff is expected." *See Smith* 2011 U.S. Dist. LEXIS 113563, at *5-6 (citing *Von Bargen v.*

22 *United States*, No. C 06-04744 MEJ, 2009 U.S. Dist. LEXIS 130350, 2009 WL 1765767, at *2

23 (N.D. Cal. June 22, 2009)).

24 **DISCUSSION**

25       Plaintiff presented the government with a claim for $2,000,000.00 but now wishes to

26 advance a $4,000,000.00 claim based on the fact that "after filing her initial claim under the

27 FTCA, Plaintiff underwent two surgeries on her elbow and one on her knee and continues to have

28 restrictions in her neck and back[,] [t]he combination of [which] [] has resulted in a permanent

United States District Court<br>Northern District of California

3

1  disabled her (sic) from returning to full-time dentistry p (sic) requiring multiple surgeries which

2  she did not anticipate at the time the claim was filed." Pl.'s Mot. (dkt. 48) at 2. Plaintiff does

3  concede that when she submitted her amended claim for $4,000,000.00 to the government, the

4  denial of her original claim had already been issued such that her "amendment crossed in the mail

5  with the Defendant's denial of the original claim . . ." *Id.* Tellingly, instead of framing the issue in

6  terms of discoverability or due diligence, Plaintiff repeatedly asserts that the true nature or extent

7  of her condition "could not have [been] reasonably expected or anticipated." *Id.* However, as

8  discussed below, that which might be unexpected or unanticipated is not necessarily always

9  undiscoverable through the exercise of due diligence as described by Judge Alsup in *Smith* – a

10 standard which appears to be in harmony with the overwhelming weight of the cases interpreting §

11 2675(b)'s "not reasonably discoverable" language which clearly requires a measure of diligence

12 beyond simply disavowing expectation and anticipation.

13       Plaintiff outlines a point-by-point summary of her various interactions with her many

14 physicians between the date of the accident (July 2, 2019) and the date that her $2,000,000.00

15 claim was submitted to the government (January 31, 2020). *See* Pl.'s Mot. (dkt. 48) at 3-6.

16 Plaintiff conceded at oral argument (and in her pleadings) that – based on her liaisons and

17 discussions with her treatment providers – she elected to initially pursue a conservative course of

18 treatment. *See id.* at 15; *see also* Pl.'s Reply (dkt. 59) at 4 (as to Plaintiff's knee injury, a

19 December 2019 treatment plan specifically stated that her physicians would pursue certain

20 treatment which, if unsuccessful, would lead to the consideration of arthroscopic surgery).

21 Plaintiff attempts to justify the increase in her claimed damages amount due to the notion that

22 undergoing knee surgery in May of 2020 and elbow surgery in July of 2020 constituted, "newly

23 discovered evidence." *See* Pl.'s Mot. (dkt. 48) at 8-9. However, while Plaintiff expends a great

24 deal of effort setting forth various excerpts from her medical records, what is missing is a showing

25 that either (1) her condition worsened after the submission of her $2,000,000.00 claim, or (2) new

26 evidence that the true nature or extent of her injuries came to light after the filing of her claim –

27 along with a showing that neither the worsening nor the new evidence was previously

28 discoverable with a reasonable measure of diligence. In short, Plaintiff was conservative in the

United States District Court
Northern District of California

4

1   initial treatment she sought, and she was conservative in estimating the value of her damages

2   claim at the time it was formulated and submitted, and she now appears to regret those decisions.

3   The court is not unsympathetic; however, the court cannot substitute its own inclination for

4   sympathy for the plain text of an applicable statute. Section 2675(b) expressly calls for newly

5   discovered evidence that was not "reasonably discoverable at the time of presenting the claim to

6   the federal agency," and Plaintiff has failed to convincingly allege, let alone demonstrate that the

7   nature and extent of her injuries were not "reasonably discoverable" on or before January 31, 2020

8   (the date on which she submitted her $2,000,000.00 claim).

9        At bottom, while the statute calls for Plaintiff to establish that an amended claim represents

10   an increased amount that was not "reasonably discoverable" (implying the exercise of diligence),

11   Plaintiff instead makes her arguments pursuant to a lesser standard of reasonable foreseeability

12   (which tends to excuse any lack of diligence and focuses only on *what she knew* based on her

13   interactions with her doctors, rather than *what she could have discovered*). *See id*. at 10-17

14   (Plaintiff makes no argument that the assumptions underlying her $4,000,000.00 claim were not

15   *discoverable* prior to the filing of her $2,000,000.00 claim); *see also* Pl.'s Reply (dkt. 59) at 4-12

16   (Plaintiff simply states that the nature and extent of her injuries were unknown). *See e.g.*, *Williams*

17   *v. United States*, 608 F. Supp. 269, 273 (S.D. Fla. 1985) ("Crucial to this Court's determination of

18   the motion to amend is the fact that plaintiffs have made no allegation that the psychologist could

19   not have examined the infant plaintiff, and rendered his diagnosis, at an earlier time, prior to the

20   presenting of the claim. Plaintiffs allege only that the psychologist *did not* do so, because plaintiffs

21   did not retain the psychologist earlier.") (emphasis in original); *see also Wardwell v. United*

22   *States*, 764 F. Supp. 679, 684 (D. Me. 1991) (Plaintiff sought "an increase in the amount of

23   damages available to her because the treating orthopedic surgeon did not undertake an assessment

24   of the permanent impairment she suffered as a result of the accident until after the filing of the

25   administrative claim," however, the court denied the request and explained "that this circumstance

26   offers an excellent example of evidence which was reasonably discoverable."); *Lowry v. United*

27   *States*, 958 F. Supp. 704, 721 (D. Mass. 1997) (denying a motion to amend the value of a claim

28   based on the discrepancies between 1989 and 1991 EMG tests of a Plaintiff suffering neck and

United States District Court
Northern District of California

1   back injuries after being rear-ended by an FBI employee on the highway because there was no

2   showing that the subsequent test results were not reasonably discoverable earlier); *Kenney v.*

3   *United States Postal Serv.*, 298 F. Supp. 2d 139, 2004 U.S. Dist. LEXIS 375 (D. Me. 2004)

4   (finding that an injury that worsens after the administrative notice is filed in manner that was not

5   reasonably discoverable when the notice was filed comes within exception to limitation on

6   recovery under 28 USCS § 2675(b)).

7          On the other hand, there is no shortage of authority setting forth clearly distinguishable

8   circumstances demonstrating situations justifying a subsequent increase of a claim amount based

9   on the fact that the worsening of certain conditions, or the true nature and extent of certain

10  injuries, are sometimes not reasonably discoverable any earlier than when they come to light. *See*

11  *e.g.*, *Sullivan v. United States*, 173 F. Supp. 2d 691, 695 (E.D. Mich. 2001) (finding that a

12  physician's testimony about the need for a second surgery owing to a condition that was unlike

13  anything he had ever seen before was indicative that the true nature and extent of Plaintiff's injury

14  "was undiscoverable at the time Plaintiff filed her administrative claim."); *Stanek v. United States*,

15  399 F. Supp. 2d 1025, 1027 (E.D. Mo. 2005) ("regional pain syndrome, type 1 ... [causing]

16  'burning pain long after the time when the[] injuries should have healed [and] which gets worse

17  rather than better over time' . . . appears to be a crucial key in the diagnosis of [a] syndrome that

18  [worsens] [over] a period of time after the initial injury has passed [and therefore] [s]uch a

19  diagnosis may be 'newly discovered evidence' under § 2675(b)."); *see also Malmberg v. United*

20  *States*, 816 F.3d 185, 2016 U.S. App. LEXIS 4106 (2d Cir. 2016) (Where plaintiff, who became

21  quadriplegic after surgery, prevailed on his medical malpractice claim against Veterans

22  Administration, remand was required because it was not clear whether district court, in denying

23  his motion to increase *ad damnum*, overlooked or considered and rejected testimony of his treating

24  physician that the extent of his deterioration was not foreseeable at the time he filed his

25  administrative claim.).

26         Accordingly, for these reasons, as well as those articulated by the government (*see* Def.'s

27  Opp. (dkt. 55) at 7-25) the court finds that Plaintiff has neither carried her burden to justify an

28  amendment pursuant to § 2675(b), nor has she established good cause to achieve the same result

United States District Court
Northern District of California

pursuant to Fed. R. Civ. P. 6(b). As mentioned above, even putting aside the notion that fact discovery has already closed, Plaintiff has submitted no authority that in any way indicates that Rule 6(b)'s rather generic provisions for computing and extending time – in general – empowers this court to simply overlook § 2675(b)'s "reasonably discoverable" language and replace it with a generic "good cause" standard while effectively thwarting the legislatively-mandated diligence standard set forth in § 2675(b).

## CONCLUSION

Consequently, for the above-stated reasons, Plaintiff's Motion (dkt. 48) seeking leave to increase the amount of her claim is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 13, 2022

ROBERT M. ILLMAN
United States Magistrate Judge